P5KKBAZC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                              25 CR 203 (RMB)

TAREK BAZROUK,
                                        Conference
            Defendant.

------------------------------x

                                  New York, N.Y.
                                  May 20, 2025
                                  9:30 a.m.

Before:

                  HON. RICHARD M. BERMAN,

                             District Judge

                    APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
JAMES LIGTENBERG
SAMUEL S. ADELSBERG
     Assistant United States Attorneys

TAMARA GIWA
FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorney for Defendant
BY:  ANDREW JOHN DALACK

Also Present:

Akil King, Pretrial

1              (Case called)
2              THE COURT:  What I'd like to do is as follows:  I have
3     a couple of questions remaining in my mind that I wanted to ask
4     of you; and, second, I don't know if you've had any joint
5     conversations with respect to discovery, et cetera, and where
6     we go from here.  So, think about that.  I'll give you the
7     option, either, if you can come up with the dates today, I can
8     put it in the decision on bail, if you like, or I can give you
9     a follow-up status conference date.  So, give that some
10    thought.
11             Here are the questions that I wanted to ask of you:
12             The way I understand it is there are three federal
13    hate crime counts in the indictment.  The question that it
14    relates to, as I understand it, there are parallel state cases
15    in New York State at the same time; is that correct?
16             MR. DALACK:  Yes, Judge, but only with respect to
17    Counts Two and Three.
18             THE COURT:  Two and Three.
19             MR. DALACK:  Yes.
20             THE COURT:  Right.
21             So, the question I wanted to ask you is:  What, if
22    anything, is happening with the Two and the Three in the state
23    courts?
24             MR. DALACK:  My understanding, from Mr. Bazrouk's
25    Legal Aid attorney, Diane Akerman, is that the felony charge in

P5KKBAZC

1  connection with that, which is a robbery charge which stems
2  from the allegation that he took a flag from one of the
3  counterprotesters, there has been no movement on it, and it
4  hasn't been indicted, it hasn't been presented to a grand jury,
5  to her knowledge, and that the 30.30 Speedy Trial Clock on that
6  felony charge is still pending.
7         Then there's a companion misdemeanor charge that was
8  supposed to be dismissed on or about May 7th, but that has not
9  been dismissed. The DA's office has indicated that they're
10 going to continue to pursue it for the time being.
11         THE COURT: Are those the two separate cases?
12         MR. DALACK: That's what I understand, your Honor,
13 yes.
14         THE COURT: Before two, presumably, different judges?
15         MR. DALACK: I believe so, your Honor. I can confirm
16 that with Ms. Akerman.
17         THE COURT: Okay. So you're saying that one is a
18 felony case and one is a misdemeanor case?
19         MR. DALACK: One is a nonviolent C felony, the
20 robbery, that, again, stems from the allegation of the
21 flag-taking, and then the other is a misdemeanor case. I
22 believe the felony is from December and the misdemeanor is from
23 January.
24         THE COURT: Okay.
25         MR. DALACK: But the government can correct me if I am

1  wrong.
2              THE COURT:  Yes.  I see how eager they are.
3              Hold off.  One second.
4              MR. ADELSBERG:  Okay.
5              THE COURT:  So, in those two cases, the state
6  cases — you mentioned Legal Aid — your client has got a
7  representation in both cases?
8              MR. DALACK:  He has representation in both cases,
9  Judge.  He's been appearing, as directed, in connection with
10 both of those cases, as we set forth in the papers and during
11 oral argument.  He's got a very strong relationship with
12 Ms. Akerman, comes to her office regularly, the family has been
13 involved, and she's representing him on both of those cases.
14             THE COURT:  On both cases?
15             MR. DALACK:  Yes, your Honor.
16             THE COURT:  That Legal Aid lawyer?
17             MR. DALACK:  Yes.  Ms. Akerman, yes.
18             THE COURT:  Got it.  Okay.
19             MR. DALACK:  Thank you.
20             MR. ADELSBERG:  Sorry, Judge.  The reason I wanted to
21 interject is, we've been in close contact with the ADA on those
22 two cases.
23             THE COURT:  Okay.
24             MR. ADELSBERG:  And the only reason those cases have
25 not proceeded is because of our case, meaning, as we are wont

1  to do, we coordinate with our state counterparts. When they
2  understood that we were coming in and interested in taking this
3  case, they then sort of ceded to allow us to charge. So
4  there's nothing about them not proceeding that suggests that
5  they're not interested in the case or they don't think the
6  evidence is strong --
7             THE COURT: No, no, I'm just asking.
8             MR. ADELSBERG: I just want to make sure that's clear.
9             THE COURT: Okay. But you agree with defense counsel
10  that there are these two cases?
11             MR. ADELSBERG: Yes.
12             THE COURT: And from what you're saying, very little,
13  if anything, has happened so far?
14             MR. ADELSBERG: Yes. That's as a result of our case,
15  meaning if it wasn't for our case, our understanding is that
16  they would have proceeded to indictment, and those cases would
17  have proceeded in state court.
18             THE COURT: Okay.
19             You agree with that as a status?
20             MR. DALACK: As a status matter, I think -- I don't
21  have the inside baseball knowledge that my counterpart has with
22  respect to what the DA's office is contemplating, but that's
23  all consistent with what I understand from Ms. Akerman.
24             THE COURT: Okay. That's great.
25             Now, the second question relates to this issue of

1    $500,000 in cash, which was, as I understand it, retrieved by

2    law enforcement when they arrested your client.

3    Correct me if I am wrong, but at our last session, or

4    one of our last sessions, the government, in this case,

5    mentioned that they thought there might be more funds, more

6    money, in the safe, or wherever it is, and my question is:  Is

7    there any more money?

8    MR. ADELSBERG:  Yes, your Honor.  We have now got into

9    the entire safe, and the amount is over $750,000.  So there was

10   two portions of the safe, one of which we were not able to

11   access by the time of the last conference, and now we have

12   been, and so added together, it's upwards of $750,000.

13   THE COURT:  Cash?

14   MR. ADELSBERG:  Cash.

15   MR. DALACK:  Just if I can make a point on that, your

16   Honor.  Obviously, it was Mr. Bazrouk who gave the agents the

17   combination to the safe.  The money has been seized.  We're not

18   pursuing it.  I can tell you right now --

19   THE COURT:  Well, I think you said last time, or

20   whenever we discussed it, that it was being forfeited by your

21   client, or whatever the word is.

22   MR. DALACK:  Yes, I imagine that at some point, we

23   will get forfeiture paperwork from the government, either in

24   connection with a pretrial disposition or otherwise, and I

25   can't think of any legal mechanism at the moment to contest the

1  forfeiture. So, one, we're not affirmatively seeking it right

2  now — I can make that representation — and then, two, assuming

3  that the government were to give us some sort of preliminary

4  order of forfeiture or comparable paperwork, I expect we would

5  sign it and not be able to contest --

6           THE COURT:  Okay.

7           So, we're up to 750,000. Is that the end of it?

8           MR. ADELSBERG:  Your Honor, we've gone through all the

9  compartments. I can't give you an exact number. I believe

10 it's above 750,000.

11          THE COURT:  It's above?

12          MR. ADELSBERG:  It's above that. I don't think it's

13 900,000, but I think it's in the ballpark above 750,000. And I

14 think, your Honor, as we said in the last conference, what

15 gives us pause is that he had access to this money, that he had

16 access to contacts to get that kind of money. So even if that

17 money, right now, is not in his possession, there's serious

18 concern that here is someone who can potentially access that.

19          MR. DALACK:  A part of what's interesting here --

20          THE COURT:  This always happens when I ask a question.

21 So I only asked if there was more money, but feel free, both of

22 you.

23          MR. DALACK:  Yes.

24          I had spoken to my counterparts yesterday evening

25 about discovery issues and wasn't aware of the total amount of

1   money that they had seized from the safe.  But be that as it

2   may, I think what we're dealing with here, though, is he was

3   presented and arrested in connection with the two state court

4   matters in December and January.  He had access to the money

5   then, and actually had access to the money through the date of

6   his arrest on May 7th.  He didn't do anything with it — he

7   didn't flee, he didn't run — including when there were these

8   parallel state cases.  So I think that actually weighs in our

9   favor with respect to risk of flight issues, particularly since

10  the money has been seized, and we've made representations about

11  its susceptibility to forfeiture.

12          THE COURT:  If you don't want to answer this, you

13  don't really have to, but I think you said, with respect to the

14  500,000, that your client was earning some $5,000 a week at

15  Exotic Clouds.  Is that where the money comes from?

16          MR. DALACK:  That's where the money comes from, your

17  Honor, yes.

18          THE COURT:  So, while I'm on that subject, do you know

19  who owns Exotic Clouds?  Or is it out of business, or what?

20          MR. DALACK:  I don't know the status of it right now,

21  your Honor.  I don't know to the extent Mr. Brian Dumeer, who

22  represents Mr. Bazrouk on that case in Connecticut, also

23  represents the codefendants.  Candidly, I didn't ask him about

24  any of the other individuals who may have been charged or

25  arrested in connection with the smoke shop.  I was just focused

P5KKBAZC

1   on Mr. Bazrouk.  So, no, I don't necessarily know what the
2   status of the shop is.  I just know that Mr. Bazrouk's
3   participation in the diversion program requires him to
4   completely separate from the smoke shop and any other related
5   activities.  And that has been in place since March of this
6   year.
7            THE COURT:  Yes, okay.  Yes, I think that's it.
8            Can you, as soon as we adjourn, send me a note and say
9   how much money is -- or the money is 750 or 760, or whatever it
10  is, as a result of your looking in the safe?  That's all I want
11  to know.  I want to know the number.  Okay?
12           Honestly, that's all I want to ask about right now.  I
13  will be prepared this morning to have a written order for you.
14  I want to include, for example, the 750 or the amount will be
15  in the order someplace, so it's helpful to have had this
16  conversation.
17           Now, how about the status of conference or scheduling
18  for this case?  Are you prepared to talk about that, or do you
19  want a subsequent conference date?  What is your pleasure?
20           MR. ADELSBERG:  Your Honor, if we can confer for a
21  moment?
22           THE COURT:  Okay.
23           (Counsel conferred)
24           MR. DALACK:  Judge, I think, after conferring with
25  opposing counsel here, they transmitted to me a proposed

1    protective order last night.  I'm still reviewing it, but I
2    expect to countersign it shortly, and then we can get that up
3    on the docket.
4              THE COURT:  Okay.
5              MR. DALACK:  From what I understand from the
6    government, they're going to start rolling out discovery this
7    week, with the hope to make a substantial production by the end
8    of the week.
9              THE COURT:  Were they waiting to get the protective
10   order signed?
11             MR. DALACK:  Yes, Judge.
12             So I think that's in my hands now, and I will
13   countersign that shortly, and we can get that on the docket.
14             So, with the understanding that the government expects
15   to make a substantial production by the end of the week, by the
16   23rd, we would be okay with a deadline for the balance of
17   discovery in the government's possession or control by
18   June 4th, with a proposed conference date of Friday, June 13th.
19   And in the interim, if there's something that comes up that
20   obviously there's a need for a conference date, we'll let the
21   Court know, but I think that will work for the parties.
22             THE COURT:  So wait a minute.  These dates are not
23   court dates?
24             MR. DALACK:  I'm sorry, Judge.  Just the June 4th date
25   would be the discovery deadline, and then June 13th would be a

P5KKBAZC

1  proposed status conference, the court date.
2              THE COURT:  So, that's not a good date for me.
3              MR. DALACK:  Forgive me.
4              THE COURT:  Can I give you a different date?
5              MR. DALACK:  Sure.
6              THE COURT:  How about Wednesday, June 11?
7              MR. DALACK:  That would work fine for me, your Honor.
8              THE COURT:  2:30?
9              MR. ADELSBERG:  That works for the government, your
10 Honor.
11             THE COURT:  Okay, good.  That is a much better --
12             MR. DALACK:  You said Wednesday, June 11th?
13             THE COURT:  Wednesday, June 11, at 2:30 p.m., yes.
14             Is there a speedy trial issue or application that you
15 all were going to make?
16             MR. ADELSBERG:  Hopefully, not an issue, but there
17 will be an application.
18             Your Honor, the government would move to exclude time
19 between now and June 11th, 2025, under the Speedy Trial Act.
20 The government submits that, in this case, given the need to
21 gather discovery, produce discovery, that exclusion of time
22 would be appropriate in this instance.
23             MR. DALACK:  With the understanding that the
24 government's going to begin rolling out discovery this week,
25 your Honor, we don't object.

1       THE COURT: Okay. Thank you.

2       I find, under 18, United States Code, Section 3161, that the request for adjournment by the government and the defense counsel is appropriate and warrants exclusion of the adjourned time from speedy trial calculations to and including June 11, at 2:30 p.m.

7       I further find that the exclusion is designed to prevent any possible miscarriage of justice, to facilitate these proceedings, including discovery, and to guarantee effective representation of, and preparation by, counsel for both parties, and, thus, the need for exclusion and the ends of justice outweigh the interests of the public and the defendant in the speedy trial, pursuant to 18, U.S.C., Section 3161(h)(7)(A) and (B).

15      MR. DALACK: Your Honor, if I may — and I know you're expecting to issue a written order this morning, and I don't want to force the Court or ask the Court to prematurely issue a decision — but we do have Mr. Bazrouk's family here, who would be the proposed cosigners to the bond and third-party custodians, and he's been produced today, and I'm not sure what the marshals' schedule is, but I would hate to have a situation where he's on the bus back to MDC when the Court issues an order granting bail.

24      THE COURT: Okay. So, here's the thing: Whenever I say I'm going to do something by lunch, invariably something

P5KKBAZC

1  else comes along, and so the answer is, I'll do my best to get
2  it by then, but I guess it's conceivable it wouldn't happen.
3  So, I am not going to direct that there be any special
4  circumstances to keep everybody around.
5           MR. DALACK:  Would it be acceptable to the Court if
6  maybe we indicated to the marshals to keep him here at least
7  until the afternoon, before the late afternoon bus?
8           THE COURT:  I hate to impose on the marshals like
9  that.  We just have to take it as it comes.
10          MR. DALACK:  Understood.
11          THE COURT:  Right.
12          MR. DALACK:  Okay.
13          THE COURT:  Thanks.
14          (Adjourned)
15
16
17
18
19
20
21
22
23
24
25