P6BsBAZp

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          25 CR 203 (RMB)

 5   TAREK BAZROUK,

 6              Defendant.

 7   ------------------------------x

 8                                          June 11, 2025
                                            2:30 p.m.
 9

10   Before:

11                   HON. RICHARD M. BERMAN,

12                                          District Judge

13                          APPEARANCES

14
     JAY CLAYTON
15       Acting United States Attorney for the
         Southern District of New York
16   BY:  JAMES A. LIGTENBERG
         SAMUEL ADELSBERG
17       Assistant United States Attorneys

18   FEDERAL DEFENDERS OF NEW YORK
         Attorneys for Defendant
19   BY:  ANDREW J. DALACK

20

21

22

23

24

25
```

P6BsBAZp

1            (Case called)

2            THE COURT:  So I've been notified by the government

3    and the defense that today's stat was originally scheduled to

4    be a conference date.  It's going to be more than that, looks

5    to me like, and that is that the defendant is intending to

6    plead guilty at this proceeding today.

7            So I have to go through a bunch of papers and I hope

8    everybody will bear with me.  First of all, did I get that

9    right, counsel, is that the purpose of today's session, that

10   there is going to be a plea of guilty?

11           MR. DALACK:  That's correct, pursuant to the terms of

12   a written plea agreement, your Honor.  Yes.

13           THE COURT:  And so I'm going to just go quickly

14   through these documents and then have an allocution.

15           MR. DALACK:  Terrific.

16           THE COURT:  So, for one, I have a document that's

17   called an advice of rights form, which is a document that we

18   use in connection with guilty pleas.  And what it does

19   essentially is indicates what rights a person is giving up by

20   pleading guilty as opposed to going to trial.

21           So I have the document and it's called advice of

22   rights form.  And it appears to me to be signed by defense

23   counsel and the defendant in this case.  The first question is,

24   counsel, is that correct that you and your client have gone

25   over this document before you signed it and are in agreement

P6BsBAZp

1   with its terms and conditions?

2              MR. DALACK:  Yes, Judge.

3              THE COURT:  OK.  I'm going to ask Mr. Bazrouk the same

4   question, because you have signed this document, too.

5              Did you go over it with your attorney before you

6   signed it?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  OK.  So then, not in any particular order,

9   but there's also a document here called waiver of indictment

10  and that has to do with the fact that the plea here would be

11  what's called a superseding information as opposed to an

12  indictment.

13             Since there's not an indictment, there is a

14  superseding information, which for our purposes is appropriate.

15  The superseding information has one count.  It's two pages

16  long, and I'll explain it in a little bit.  It talks about

17  three overt -- what we call overt -- acts.  So there is the

18  document that's related called a waiver of indictment.

19             Again, defense counsel, you have signed this waiver of

20  indictment and so has Mr. Bazrouk.  Did you all have an

21  opportunity to go over it, one with the other?

22             MR. DALACK:  Yes, your Honor.  I had an opportunity to

23  explain to Mr. Bazrouk the benefits and drawbacks, if there are

24  any, to waiving indictment in this context with proceeding by

25  information.  He understood the terms, and we executed that

P6BsBAZp

1    form just moments ago in court.

2              THE COURT:  OK.  Mr. Bazrouk, you went over that

3    document with your attorney before you signed it.

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  OK.  So then we have the superseding

6    information, which I mentioned.

7              So then we have the plea agreement itself.  That's

8    dated today's date, June 11, and it is essentially an agreement

9    with respect to pleading guilty between and among the

10   government attorneys and the defense, defense counsel, and

11   Mr. Bazrouk.  It is almost eight pages long and it is the

12   agreement pursuant to which the understanding is that the

13   defendant is going to plead guilty today.

14             Defense counsel, well, let's start with the

15   government.  The government has signed the plea agreement,

16   correct?

17             MR. LIGTENBERG:  Yes, your Honor.

18             THE COURT:  And defense counsel has signed the plea

19   agreement as well?

20             MR. DALACK:  Yes, Judge.

21             THE COURT:  And, Mr. Bazrouk, you went over this and

22   you signed the plea agreement yourself, is that correct?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  OK.  So, and, let's see.  Hold on one

25   second.

P6BsBAZp

1      So I think it's appropriate for us to swear in

2  Mr. Bazrouk, because they are going to ask him, in what's

3  called an allocution, a series of questions and answers to

4  ensure that, in fact, he wishes to plead guilty and what he

5  pleads guilty.

6      So, Ms. Murray, if you would swear in Mr. Bazrouk.

7      (Defendant sworn)

8      Mr. Bazrouk, before I go any further, I'm going to

9  indicate again for the record that I have this statement handed

10  to me that we use in plea situations, the so-called advice of

11  rights form, and it advises of certain rights that are waived

12  and other consequences of pleading guilty.  You signed that,

13  and I think I asked you before, but I'll ask it again.

14      You went over it carefully with your attorney before

15  you signed it?

16      THE DEFENDANT:  Yes, your Honor.

17      THE COURT:  Thank you.

18      And then, again, the next document is the letter

19  agreement between the government and the defense.  This is the

20  plea agreement between the government and the defense.

21      And, Mr. Bazrouk, you went over that guilty plea

22  agreement with your attorney before you signed it?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  OK.  So, Mr. Dalack, it's obvious from

25  these preliminary discussions that Mr. Bazrouk wishes to enter

P6BsBAZp

1    a guilty plea as to Count One of the superseding information.

2            And my question to you is, is that correct, and is

3    that the purpose of this afternoon's proceeding?

4            MR. DALACK:  Yes, Judge, you're correct, and that's

5    the purpose of today's presentings.

6            THE COURT:  Thank you.

7            So before I accept your guilty plea, Mr. Bazrouk, I'm

8    going to ask you a series of questions so that I can establish

9    to my satisfaction that you wish to plead guilty and you do so

10   voluntarily and knowingly and because you are guilty, and also

11   to establish that you know just what rights you'll be giving up

12   by pleading guilty.

13           So if you don't understand any of my questions or if

14   at any time you wish to consult with your attorney for any

15   reason, please say so, and I'll give you as much time as you

16   need to consult with your attorney, because it's essential to a

17   valid guilty plea that you understand each question before you

18   answer.

19           OK?

20           THE DEFENDANT:  Thank you, your Honor.

21           THE COURT:  Let's see here.  You understand also --

22   hold on one second.

23           You understand that, having been sworn under oath,

24   your answers to my questions must be truthful and would be

25   subject to the criminal penalties of perjury or of making a

P6BsBAZp

1    false statement if you did not answer truthfully?

2                Do you understand that?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Please state your full name.

5                THE DEFENDANT:  Bazrouk Tarek.

6                THE COURT:  And Tarek is your first name, so to speak,

7    and Bazrouk is a family name, is that right?

8                THE DEFENDANT:  Yes.

9                THE COURT:  And how old are you?

10                THE DEFENDANT:  20 years old.

11                THE COURT:  And are you a United States citizen?

12                THE DEFENDANT:  Yes, your Honor.

13                THE COURT:  And natural born U.S. citizen, is that

14    right?

15                THE DEFENDANT:  Yes, your Honor.

16                THE COURT:  OK.  How far did you go in school and

17    where was that?

18                THE DEFENDANT:  I'm in college.

19                THE COURT:  Some college?

20                THE DEFENDANT:  Yes.

21                THE COURT:  And where, just geographically?

22                THE DEFENDANT:  City Tech.

23                THE COURT:  City College?

24                THE DEFENDANT:  City Tech in Brooklyn.

25                THE COURT:  OK.  And did you graduate?

P6BsBAZp

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes. |
| 2 | THE COURT:  And what degree did you get? |
| 3 | THE DEFENDANT:  Associate's degree. |
| 4 | THE COURT:  Got it. |
| 5 | And are you now or have you recently been under the |
| 6 | care of a medical doctor? |
| 7 | THE DEFENDANT:  No. |
| 8 | THE COURT:  How about a psychiatrist or a mental |
| 9 | health physician? |
| 10 | THE DEFENDANT:  No, your Honor. |
| 11 | THE COURT:  And so, how is your health today, |
| 12 | physically, first of all? |
| 13 | THE DEFENDANT:  Very good, your Honor. |
| 14 | THE COURT:  And what about mentally? |
| 15 | THE DEFENDANT:  Very good, your Honor. |
| 16 | THE COURT:  OK.  And have you ever been addicted to |
| 17 | drugs or to alcohol? |
| 18 | THE DEFENDANT:  No, your Honor. |
| 19 | THE COURT:  Have you ever been hospitalized or treated |
| 20 | for any addiction? |
| 21 | THE DEFENDANT:  No, your Honor. |
| 22 | THE COURT:  You have taken any drugs or medicine or |
| 23 | pills or drunk any alcoholic beverages in the past 24 hours? |
| 24 | THE DEFENDANT:  No, your Honor. |
| 25 | THE COURT:  Anything that might cloud your answers or |

P6BsBAZp

1    your frame of mind?

2             THE DEFENDANT:  No, your Honor.

3             THE COURT:  And, again, I'm going to ask the same

4    question I just asked a minute or so ago, but it's important to

5    establish that, first of all, how do you feel today physically?

6             THE DEFENDANT:  Very good, your Honor.

7             THE COURT:  And how do you feel mentally?

8             THE DEFENDANT:  Very good, your Honor.

9             THE COURT:  And you understand what's happening here

10   in court today?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  And here's a question for both the

13   government and the defense.

14            Does either side have any doubts or concerns as to

15   Mr. Bazrouk's competence to plead at this time?

16            MR. LIGTENBERG:  No, your Honor.

17            MR. DALACK:  No, Judge.  Thank you.

18            THE COURT:  Neither I do.

19            Based on the record today, including Mr. Bazrouk's

20   testimony, I find that he is competent to plead.

21            Mr. Bazrouk, have you been given a full opportunity to

22   discuss all aspects of this case with your attorney?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Including any possible defenses that you

25   might have?

P6BsBAZp

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  To the charges in the information to which

3    you've offered to plead guilty?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And are you fully satisfied with your

6    attorney's representation of you?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  How about with the legal advice that he

9    has given you?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Now I'm going to explain certain

12    constitutional rights that you have and pose some questions

13    about them.

14          First, since we have here an information, are you,

15    counsel, and your client waiving indictment in this proceeding?

16          THE DEFENDANT:  Yes, your Honor.

17          MR. DALACK:  Yes, Judge.

18          THE COURT:  Mr. Bazrouk, since you've offered to plead

19    guilty to the count, one count, contained in what is called an

20    information, do you understand that you had the right to have

21    evidence underlying these charges presented to a grand jury and

22    to have those jurors decide whether there was probable cause

23    that you should be charged and that by signing a waiver of

24    indictment, you gave up that right and permitted the government

25    to file this information based only on the signature of the

P6BsBAZp

1    United States Attorney?

2            Do you realize that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  And do you understand that you have the

5    right to plead not guilty if that is what you preferred to do?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Under the Constitution and laws of the

8    United States, you are entitled to a speedy and public trial by

9    a jury on the charges contained in the information.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  And at trial you would be presumed, if you

13   decided to have a trial, you would be presumed to be innocent,

14   the government would be required to prove that you were guilty

15   by competent evidence and beyond a reasonable doubt for the

16   charges contained in the information before you could be found

17   guilty.

18           Do you realize that?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  And do you also realize that a jury would

21   have to agree unanimously that you were guilty of the charges

22   in the information and would you not have to prove that you

23   were innocent?

24           Do you realize that?

25           THE DEFENDANT:  Yes, your Honor.

P6BsBAZp

1           THE COURT:  Also, if you decided to have a trial

2    instead of pleading guilty, at the trial and at every stage of

3    your case, you would be entitled to be represented by an

4    attorney, as are you today and have been throughout these

5    proceedings, and if you could not afford an attorney, one would

6    be appointed at public expense to represent you?

7           Do you realize that?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  And also during a trial, if you decided to

10   have one, the witnesses for the government would have to come

11   to court and testify in your presence, your attorney could

12   cross-examine the witnesses for the government, he could object

13   to evidence offered by the government, and he could offer

14   evidence and subpoena witnesses on your behalf.

15          Do you understand that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  And also at a trial, if you decided to

18   have a trial, although you would have the right to testify if

19   you chose to do so, you would also have the right not to

20   testify.  And no one, including especially the jury, could draw

21   any inference or suggestion of guilt from the fact that you did

22   not testify if that is what you chose to do?

23          Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And even now, this afternoon, as you are

P6BsBAZp

1   entering this guilty plea, you still have the right to change

2   your mind and plead not guilty and go to the trial on the

3   charges contained in the information.

4           Do you realize that?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  And if you do plead guilty and if I accept

7   your guilty plea, then you'll give up your right to have a

8   trial and the other rights I've been discussing with you and

9   there will be no trial, but I will still enter a judgment of

10   guilty against you.

11           Do you realize that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  And I will thereafter, not today but

14   sometime that we agree in the future, I will sentence you on

15   the basis of your guilty plea after I've considered what's

16   called a presentence investigation report prepared by the

17   probation department.  And that report will include what is

18   called a sentencing guidelines analysis under the 1984

19   Sentencing Reform Act and whatever submissions, written or oral

20   or both, whatever submissions I get from your lawyer and from

21   the government's lawyers.

22           Do you realize that?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Have you received a copy of the

25   superseding information?

P6BsBAZp

1          I mentioned this before, but I'll ask it again.  Have

2    you received a copy of that superseding information which

3    contains the charges against you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And have you discussed fully with your

6    attorney the charges in the information in which you intend to

7    plead guilty?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And are you fully satisfied with your

10   attorney's legal representation of you?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And how about with the legal advice that

13   he's given you?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you understand that you are charged

16   with a felony in the information and the information, I'll just

17   take a moment and read it so that you will be able to respond

18   to it.

19         So there's one count in the superseding information

20   and it says, from at least in or about April 2024 up to and

21   including at least in or about January 2025, in the Southern

22   District of New York and elsewhere, Tarek Bazrouk, the

23   defendant, and others, willfully and knowingly did combine,

24   conspire, confederate, and agree together with each other to

25   commit an offense against the United States; to wit, hate crime

P6BsBAZp

1   acts.

2                Do you understand that?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  And the superseding information goes on to

5   say that it was a part, an object of the conspiracy, that Tarek

6   Bazrouk, the defendant, and others would and did willfully

7   cause bodily injury to multiple victims because of the victim's

8   actual and perceived race, the victim's actual and perceived

9   religion, and the victim's actual and perceived national

10  origin.

11               The superseding information goes on to delineate

12  several overt acts, which I'm going to read to you now, as

13  well.  The superseding information says the following:

14               In furtherance of the conspiracy and to affect the

15  illegal object thereof, the following overt acts, among others,

16  were committed in the Southern District of New York and

17  elsewhere:

18               A, the first overt act, on or about April 15, 2024,

19  the defendant willfully caused bodily injury to victim number

20  one because of victim number one's actual and perceived race,

21  victim number one's actual and perceived religion, and victim

22  one's actual and perceived national origin; to wit, it goes on

23  to say, Bazrouk kicked victim one in the chest at a protest

24  where victim one was standing with individuals wearing kippahs,

25  k-i-p-p-a-h-s, carrying Israeli flags, and singing Jewish

P6BsBAZp

1    songs, causing injury to victim number one.

2            The second overt act, we'll call it B, says the

3    following:

4            On or about December 9, 2024, Tarek Bazrouk willfully

5    caused bodily injury to victim number two because of victim

6    number two's actual and perceived race, victim number two's

7    actual and perceived religion, and victim number two's actual

8    and perceived national origin; to wit, Bazrouk punched victim

9    number two in the face at a protest where victim number two was

10   wearing a kippah, k-i-p-p-a-h, and had an Israeli flag draped

11   around his shoulders, causing bodily injury to victim number

12   two.

13           And the third overt act, we'll call it C -- as in A,

14   B, and C -- the third overt act states as follows:

15           On or about January 6, 2025, Bazrouk willfully caused

16   bodily injury to victim number three because of victim three's

17   actual and perceived race, victim number three's actual and

18   perceived religion, and victim number three's actual and

19   perceived national origin; to wit, Bazrouk punched victim

20   number three in the face at a protest where victim number three

21   was wearing an Israeli flag around his shoulders and a chain

22   with a Jewish star around his neck, causing bodily injury to

23   victim number three.

24           Here's a question for the counsel first.  Counsel, do

25   you agree with that summary of the superseding information,

P6BsBAZp

1    starting with the government?

2              MR. LIGTENBERG:  Yes, your Honor.

3              MR. DALACK:  Yes, Judge.

4              THE COURT:  So now, Mr. Bazrouk, I want to discuss for

5    a few minutes the maximum possible penalty for the charges in

6    the information which are as follows.  It doesn't mean that you

7    will be sentenced to the actual maximums, but these are the

8    maximums for the information.

9              The maximum term of imprisonment is five years.  Do

10   you realize that?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  The maximum term of supervised release,

13   which is the period of supervision under the court's authority

14   and the probation department supervised release, is that period

15   following incarceration, and the maximum term of supervised

16   release is three years.

17             Do you realize that?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand that the maximum fine is

20   $250,000?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And do you understand that there would be

23   a special assessment of $100?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  And do you understand that a felony

P6BsBAZp

1   adjudication, which this would be if we complete this plea

2   allocution, do you understand that a felony adjudication may

3   result in your being deprived of certain rights, such as the

4   right to vote, the right to hold public office, the right to

5   serve on a jury, and the right to possess a firearm?

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And do you understand that I may also

9   order that you pay what is called restitution to any victim?

10         Do you realize that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And do you understand that I may require

13  you to notify victims of your conviction?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  And do you understand that parole has been

16  abolished in the federal system, which is where we are, and

17  instead of parole, we have what is called, and what I described

18  briefly a minute or so ago, supervised release.

19         Do you understand that you may be subject in addition

20  to incarceration, to a period of supervised release?

21         Do you realize that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And with respect to supervised release,

24  you need to be aware that there would be terms and conditions,

25  including without limitation possibly community service or drug

P6BsBAZp

1   rehabilitation, if it were appropriate, or therapeutic

2   counseling, if that were appropriate, and that if you did not

3   comply with any of the terms or conditions of supervised

4   release, you could, following a hearing, be returned to prison.

5           Do you understand that?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Do you understand, if there were such a

8   hearing as to whether or not you violated any terms and

9   conditions of your supervision, that hearing would be a nonjury

10  proceeding just before myself as the presiding judge?

11          Do you realize that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Are you serving any other sentences at

14  this time, state or federal?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  Are you being prosecuted in state court

17  for any crime?

18          MR. DALACK:  Your Honor, there are pending state

19  matters that overlap with the allegations here.  We're hopeful

20  that following this guilty plea, those can be resolved.

21          THE COURT:  So the answer then --

22          MR. DALACK:  The answer --

23          THE COURT:  -- to the question would be yes, is that

24  fair?

25          MR. DALACK:  Yes.  There are open state cases, but

P6BsBAZp

1    they track the allegations here.

2              THE COURT:  Right.  In state court, I take it, right?

3              MR. DALACK:  Yes, your Honor.

4              THE COURT:  In New York?

5              MR. DALACK:  Yes.

6              THE COURT:  And are there separate court cases, state

7    cases, or just one?

8              There might be one for each of three.  I don't know

9    for sure.

10             MR. DALACK:  There's certainly not one for each of the

11   three.  There were two pending with respect to December and

12   January.  I don't know if both of them are still active.  At

13   least one of them still is.

14             THE COURT:  OK.  That would be December 2024 and

15   January 2025?

16             MR. DALACK:  Correct, your Honor.

17             THE COURT:  OK.  Thank you.

18             Do you agree with that, Mr. Bazrouk?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And do you understand, Mr. Bazrouk, that

21   the court is required to consider, but is not obligated, to

22   following what we call the Sentencing Reform Act of 1984 and

23   what are called the sentencing guidelines developed by the

24   United States Sentencing Commission?

25             Do you understand that?

P6BsBAZp

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And do you understand that the court is

3    obligated to calculate the applicable sentencing guideline

4    range, and to consider that range, any possible departures

5    under the sentencing guidelines, and other sentencing factors

6    under 18, United States Code, Section 3553(a)?

7          Do you realize that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And the factors that really drive what the

10   sentence will be are those factors found at 18, United States

11   Code, Section 3553(a).  They are the following:

12         Number one factor is the nature and the circumstances

13   of the offense or the crime and the history and characteristics

14   of the defendant;

15         Number two is the need for the sentence imposed to

16   reflect the seriousness of the offense, to promote respect for

17   the law, to provide a just punishment for the offense, to

18   afford adequate deterrence to criminal conduct, to protect the

19   public from further crimes of the defendant, and to provide the

20   defendant with needed educational or vocational training, or

21   medical care, or other correctional treatment in the most

22   effective manner.  And in doing all that, that is to say in

23   assessing those factors, we look at the kinds of sentences that

24   are available, the kinds of sentence, and the sentencing range

25   established in the sentencing guidelines or under the

P6BsBAZp

1    sentencing guidelines.  We look at any policy statements that

2    may have been issued by the United States Sentencing Commission

3    that apply.  We seek to avoid unwarranted sentence disparities

4    among similarly situated defendants.  And in appropriate cases,

5    to provide for restitution.

6         These are the factors that are most pertinent when it

7    comes time to establish an appropriate sentencing.

8         Have you discussed this aspect of your case as to say

9    sentencing, with your counsel?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  And have you discussed with counsel how

12   the sentencing guidelines might apply, if at all, in your case?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  And are you aware that I am not bound by

15   any estimates that you might have had or your counsel may have

16   discussed in connection with sentencing?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  And even if you don't like the sentence

19   that is imposed, you would still not be able to withdraw your

20   guilty plea.

21        Do you realize that?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  There in the plea agreement that we talked

24   about at the beginning of this session, there is in the

25   June 11, 2025 letter, there's a sentence that says in quotes,

P6BsBAZp

1    the sentence to be imposed upon the defendant, Tarek Bazrouk,

2    is determined solely by the court.

3            Starting with counsel first, do you agree with that

4    concept?

5            MR. DALACK:  Yes, your Honor.

6            THE COURT:  And do you, Mr. Bazrouk, as well?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Then do you think, bottom line,

9    Mr. Bazrouk, do you think that you understand the consequences

10   of pleading guilty here today?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Has anyone threatened you or in any way

13   forced you to plead guilty?

14           THE DEFENDANT:  No, your Honor.

15           THE COURT:  Including any attorneys?

16           THE DEFENDANT:  No, your Honor.

17           THE COURT:  So we've already noted that there is a

18   plea agreement, and I asked you this before, but I will ask it

19   again at this point.

20           That plea agreement, did you carefully go over it and

21   discuss it with your attorney?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  And we've identified the letter as

24   June 11, 2025.  Did you review that plea agreement carefully

25   with your counsel?

P6BsBAZp

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And did you think you understood its

3   contents?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And so, here's that letter agreement has a

6   few points that I want to highlight here during the course of

7   this plea allocution.

8          First of all, there is what we call an offense level,

9   and in that plea agreement, the offense level is designated 13.

10          Is that your understanding?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  There's also a consent of the criminal

13   history category in the plea agreement and it is I.

14          Do you understand that?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And there's a sentencing guideline range

17   in the plea agreement that is from 12 to 18 months of

18   incarceration.

19          Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Next, the defendant agrees in the plea

22   agreement that you will not file a direct appeal or otherwise

23   challenge by petition, pursuant to 28, United States Code,

24   Section 2255, this so-called habeas provisions or any other

25   provision, your conviction.

P6BsBAZp

1          In other words, you are waiving your right to appeal

2     your conviction; do you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  The plea agreement also says that you

5     agree to waive all interest in the amount of $750,062.06 in

6     United States Currency, which was seized from your residence on

7     or about May 7, 2025, in any administrative or judicial

8     forfeiture proceeding, whether criminal or civil, state or

9     federal, and you, Mr. Bazrouk, have agreed to consent to the

10    entry of orders of forfeiture for such property, and you've

11    also waived the requirements of the Federal Rules of Criminal

12    Procedure 32.2 and 43(a) regarding the notice of forfeiture in

13    the charging instrument, announcement of the forfeiture at

14    sentencing, and incorporation of the forfeiture in the

15    judgment, the criminal judgment in this case, and knowingly and

16    voluntarily waived the 60-day deadline requirement for notice

17    in the administrative forfeiture proceedings pursuant to

18    19, United States Code, Section 1607, and 18, United States

19    Code, section 983.

20          So that section that I just read to you in summary

21    relates to forfeiture of property.  In fact, in cash in the

22    amount of $750,062.06, which was seized from your residence on

23    or about May 7, 2025, and this provision that you forfeit that

24    amount of money.

25          THE DEFENDANT:  Yes, your Honor.

P6BsBAZp

1              THE COURT:  You also agree in the plea agreement that

2    you would not file a direct appeal or otherwise challenge by

3    petition, pursuant to 28, United States Code, Section 2255, or

4    any other provision, any sentence that is within or below the

5    stipulated guideline range of 12 to 18 months of incarceration.

6              Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  There are a few more provisions in the

9    plea agreement that I want to go over with you.  Just a few

10    left.

11              First, the defendant agrees not to appeal -- this is

12    another waiver of appeal -- or bring a collateral challenge of

13    any term of supervised release that is less than or equal to

14    the statutory maximum of three years or any condition of

15    supervised release imposed by the court for which you had

16    notice, including from a recommendation by the probation office

17    in the presentence investigation report, and an opportunity to

18    object.  So that was a waiver simplified somewhat, that you

19    waived your right to appeal supervised release if it's less

20    than three years.  That three years is the maximum that we

21    discussed before of supervised release.

22              Do you realize that?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  There's another waiver of appeal, and you

25    agree in this waiver not to challenge your conviction or

P6BsBAZp

1    sentence on direct appeal or through litigation under Title 28,

2    United States Code, Section 2255 and/or Section 2241, on the

3    basis of any actual or perceived adverse immigration

4    consequences, including removal or denaturalization, resulting

5    from your guilty plea and conviction.

6            I'm not sure if that, how to what degree, if any, that

7    pertains to you, but that is what is included in the plea

8    agreement.

9            And are you aware of that?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Counsel, did you have another quarrel with

12    the way that I have described some of the provisions of the

13    plea agreement?

14            MR. LIGTENBERG:  No, your Honor.

15            MR. DALACK:  No, Judge.  Thank you.

16            THE COURT:  And Mr. Bazrouk?

17            THE DEFENDANT:  No, your Honor.

18            THE COURT:  There is a provision in the plea agreement

19    also that says that the sentence to be imposed on Tarek Bazrouk

20    remains within the sole discretion of the court.

21            Do you, starting with the counsel, agree with that

22    principle?

23            MR. LIGTENBERG:  Yes, your Honor.

24            MR. DALACK:  Yes, Judge.

25            THE COURT:  Has anybody, Mr. Bazrouk, made any promise

P6BsBAZp

1    or inducement to cause you to plead guilty?

2         THE DEFENDANT:  No, your Honor.

3         THE COURT:  Has anyone made any promise to you as to

4    what your sentence will be?

5         THE DEFENDANT:  No, your Honor.

6         THE COURT:  Including any attorneys?

7         THE DEFENDANT:  No, your Honor.

8         THE COURT:  And, again, have you discussed the

9    sentencing guideline process with counsel?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  So I'm going to turn now to government

12    counsel for a moment.  I would ask the government to tell us,

13    in summary, what the government believes it would be able to

14    prove, that is to say the evidence if this case were to go to

15    trial, instead of being resolved at this plea session.

16         MR. LIGTENBERG:  Yes, your Honor.

17         The evidence would show that, from at least in or

18    about April 2024 to in or about January 2025, at protests

19    relating to the Israel-Gaza war, Bazrouk conspired to  assault

20    Jewish individuals due to their race, religion, and perceived

21    national origin.  The evidence would further show that on three

22    occasions, Bazrouk, in fact, targeted and assaulted Jewish

23    protesters due to their race, religion, and perceived national

24    origin.

25         First, on April 15, 2024, Bazrouk attended a protest

P6BsBAZp

concerning the Israel-Gaza war in Lower Manhattan outside the

New York Stock Exchange.  During the protest, Bazrouk was

arrested by officers from the NYPD after lunging at a group of

pro-Israel protestors.  As Bazrouk was being escorted to an

NYPD vehicle, he kicked a different individual, a Jewish

college student, in the stomach, causing bodily injury.  And at

the time of the assault, the victim was standing near other

Jewish protestors who were wearing kippahs, carrying Israeli

flags, and singing Jewish songs.

Approximately eight months later, on December 9, 2024,

Bazrouk assaulted another individual at a protest relating to

the Israel-Gaza war next to Columbia University in Upper

Manhattan.  The victim of the second assault is a Jewish

student who attended Columbia.  On the date of the assault, the

victim and his brother were wearing kippahs, the victim had an

Israeli flag draped over his shoulders, and the victim was

singing Jewish songs.  As the protest continued, Bazrouk, with

his mouth covered, stole an Israeli flag from the victim's

brother and fled.  After the victim and his brother followed

Bazrouk through a crowd to retrieve the flag, Bazrouk snuck up

beside the victim and struck him in the face with a closed

fist, causing bodily injury.

Third, roughly one month later, on January 6, 2025,

Bazrouk assaulted a third Jewish individual at a protest

concerning the Israel-Gaza war near First Avenue and East 18th

P6BsBAZp

1    Street in Manhattan.  At this protest, the victim was wearing

2    an Israeli flag around his shoulders, a hat with an Israeli

3    flag, and a chain with a Jewish star.  During the protest,

4    Bazrouk, whose face was covered, made contact with the victim's

5    shoulder and wrapped his foot around the victim's ankle.  The

6    victim attempted to push Bazrouk away and cursed at him.

7    Bazrouk then punched the victim in the nose with a closed fist,

8    causing bodily injury.

9        During each of these three assaults, Bazrouk targeted

10   and attacked the victims because they were Jewish.  Law

11   enforcement subsequently searched Bazrouk's phone.  Evidence

12   from that device revealed anti-Semitic bias and support for

13   anti-Jewish terrorist groups, including Hamas, demonstrating

14   his motivation for repeatedly assaulting Jewish victims.

15       In text messages, for example, he identified himself

16   as a Jew-hater, labeled Jews as worthless, extorted Allah to

17   get us rid of Jews, called an acquaintance a fucking Jew, and

18   told a friend to 'slap that bitch' in reference to a women with

19   an Israeli sticker on her laptop.  He also told a friend he was

20   mad happy to have learned that certain of his family members

21   overseas are part of Hamas.  His phone was also littered with

22   pro Hamas and pro Hezbollah propaganda.  And his phone showed

23   him communicating with at least one other individual about his

24   assaults on Jewish protestors and his intent to hurt them.

25       The evidence at trial would include testimony from

P6BsBAZp

1  witnesses, including victims and law enforcement officers,

2  videos of the assaults, including body-worn camera footage, and

3  cell phone camera footage, messages from Bazrouk's cell phone,

4  including the messages that I just discussed, where he

5  discusses the assaults and his intent to harm Jewish

6  protesters, and messages, social media evidence, and other

7  materials from Bazrouk's phone revealing anti-Semitic and

8  anti-Israel animus and support for a group, such as Hamas and

9  Hezbollah.

10         And the government's evidence as to venue would be

11  that all of these assaults occurred in Manhattan in the

12  Southern District of New York.

13         THE COURT:  Thank you.

14         Back to you, Mr. Bazrouk.  In light of the statements

15  of the government that you've just heard and in view of the

16  questions that I've asked you so far and the answers you have

17  given, do you wish to plead guilty or not guilty at this time?

18         THE DEFENDANT:  I wish to plead guilty.

19         THE COURT:  So, please tell me in your own words what

20  it is that you did that makes you believe that you are guilty

21  of the crime of conspiracy to commit hate crime acts to which

22  you are pleading guilty today.

23         THE DEFENDANT:  Between April 2024 and January 2025,

24  in Manhattan, I participated in protests against Israel's

25  conduct in the Gaza Strip.  In the course of those protests, I

P6BsBAZp

agreed with others to physically assault counterprotestors who

appeared to be Jewish or Israeli because of our perception of

their identity.

     In particular, I admit that I kicked a person who

appeared to me to be Jewish or Israeli in the torso on

April 15, 2024.  I also punched a person in the face at a

protest on December 9, 2024, who I believed was Jewish or

Israeli because of the clothing he wore and because he had an

Israeli flag draped around his shoulders.

     I further admit to punishing a different person in the

face on January 6, 2025, who I believed was Jewish or Israeli

because he also had an Israeli flag draped over his shoulders.

In each of these incidents, I acted willfully to cause bodily

injury.  I am very sorry for all of this.

     I am Palestinian and began participating in the

protests to express my outrage over Israel's widespread killing

and displacement of Palestinian civilians in the Gaza Strip.  I

should have never used violence and should have never targeted

any counterprotestors because of my perception of them as

Jewish or Israeli.

     I hope my family, my community, and the victims of my

assaults can forgive me.

     THE COURT:  Thank you.

     Are you pleading guilty to the crime charged in the

information because you are, in fact, guilty of that crime?

P6BsBAZp

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And does the government counsel agree that

3     there is a sufficient factual predicate for today's guilty

4     plea?

5          MR. LIGTENBERG:  We do, your Honor.

6          And just for the record, I might spell out the

7     elements that I do think were satisfied by the allocution.

8          So, under 18 U.S.C. 371, the government would have to

9     prove at trial four elements beyond a reasonable doubt:

10          First, that two or more persons agreed to commit an

11     offense against the United States.  Here, that offense is

12     committing hate crimes, and I'll lay out those elements in a

13     moment;

14          Second, that the defendant was a party to or a member

15     of that agreement;

16          Third, that the defendant joined the agreement or

17     conspiracy knowing of its objective and intending to join

18     together with at least one other conspirator to achieve that

19     objective; and

20          Fourth, that at some time during the existence of the

21     agreement or conspiracy, at least one of its members performed

22     an overt act in furtherance of the objective of the agreement.

23     And the object of the conspiracy here is committing hate crimes

24     causing bodily injury, in violation of 18 U.S.C. Section

25     249(a)(1)(A).

P6BsBAZp

1        That object itself contains two elements:

2        First, that the defendant willfully caused bodily

3    injury; and

4        Second, that the defendant acted because of the race,

5    color, religion, or national origin of any person.

6        And, obviously, the government would also have to

7    prove venue beyond a reasonable doubt.  We do think the

8    allocution the defendant just gave is sufficient to achieve all

9    of those elements.

10        THE COURT:  Thank you.

11        I'm going to ask defense counsel and Mr. Bazrouk, do

12    you agree that, starting with defense counsel, that there is a

13    sufficient factual predicate for today's guilty plea?

14        MR. DALACK:  Yes, your Honor.

15        THE COURT:  And Mr. Bazrouk?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  OK.  It is then the finding of this court

18    in this case, *U.S. v. Tarek Bazrouk*, that the defendant is

19    fully competent and capable of entering an informed plea, that

20    the defendant is aware of the nature of the charges and the

21    consequences of the plea, and that the plea of guilty is a

22    knowing and voluntary plea supported by an independent basis in

23    fact supporting each of the essential elements of the crime

24    charged in the information.

25        The plea is, therefore, accepted and the defendant is

P6BsBAZp

 1    now adjudged guilty of the offense.

 2              Is there any reason, in the opinion of counsel, why I

 3    should not direct that a presentence investigation report be

 4    prepared?

 5              MR. LIGTENBERG:  No, your Honor.

 6              MR. DALACK:  No, your Honor.

 7              I just would ask that no interview be conducted

 8    outside of my presence.

 9              THE COURT:  I'll get to that.

10              And, counsel, do you wish then to be present for any

11    interview in connection with the development of that

12    presentence report?

13              MR. DALACK:  Sorry to jump the gun.

14              Yes, I do.

15              THE COURT:  That's OK.

16              So, in any event, I'm ordering that there be no

17    interview of your client unless counsel has been given the

18    opportunity to be present.

19              So, I hereby order a presentence investigation report

20    be made.  Mr. Bazrouk, it's in your best interest, in my

21    opinion, to cooperate with the probation department, who will

22    prepare the presentence report, since the report will be

23    important in my decision as to what your sentence will be.  I

24    suggest that you tell them whatever they ask, consulting with

25    your attorney, both the good things and not-so-good things,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P6BsBAZp

1    because if you don't disclose something that they ask about and

2    they find it out themselves, then they may say that you were

3    not being truthful with them, and that would not be helpful to

4    you.

5         You and your counsel and the government will have a

6    right and will have the opportunity to examine the presentence

7    report before the sentencing date, and you'll also have the

8    opportunity to file any objections.  So, I urge you to,

9    Mr. Bazrouk, review this report carefully with your attorney

10   and discuss it with your attorney before sentencing.  If there

11   are any mistakes in the report, please point them out to your

12   attorney so that he can point them out to me before the

13   sentencing, and so that I don't proceed on the basis of

14   mistaken information.

15        My thought is that the sentencing take place at

16   10:00 a.m. on October 1, 2025.  Mr. Bazrouk and his counsel and

17   the government will have the opportunity, of course, to be

18   heard at that time.

19        With respect to sentencing submissions, including any

20   letters or documents, should be filed by September 16, 2025, by

21   the defense, and the government sentencing submission is to be

22   filed by September 23, 2025.

23        The remand will continue to the date of sentence.  All

24   orders are continued, if there are any that are extant,

25   including remand.

P6BsBAZp

|  | |
|---|---|
| 1 | And finally, let me ask if counsel wish to add |
| 2 | anything to today's plea proceeding, starting with the |
| 3 | government? |
| 4 | MR. LIGTENBERG:  No, your Honor. |
| 5 | THE COURT:  Defense counsel? |
| 6 | MR. DALACK:  With the court's indulgence, if the court |
| 7 | has availability on October 2 for sentencing, I would be |
| 8 | grateful. |
| 9 | MR. LIGTENBERG:  I think it's a holiday. |
| 10 | THE COURT:  It is.  It's a Jewish holiday on that |
| 11 | date. |
| 12 | MR. DALACK:  Why don't we do that, Judge.  I'll go |
| 13 | ahead and resolve my conflict for the first. |
| 14 | THE COURT:  Either that, or we can leave the date that |
| 15 | I mentioned, and then you and the government could get |
| 16 | together, if there is need to change that date, and let me know |
| 17 | by letter. |
| 18 | MR. DALACK:  That makes good sense to me. |
| 19 | THE COURT:  OK.  Christine points out that our |
| 20 | calendar is available on October 7 or 8, if that's better for |
| 21 | you. |
| 22 | MR. DALACK:  I think let's stick with the first, and |
| 23 | if I can't move my conflict, we'll write to the court. |
| 24 | THE COURT:  Fair enough.  Good. |
| 25 | Did the government wish to add anything further? |

P6BsBAZp

1          MR. LIGTENBERG:  No, your Honor.

2          THE COURT:  No?

3          And, finally, is the government satisfied with the

4    plea allocution?

5          MR. LIGTENBERG:  Yes, your Honor.

6          THE COURT:  And how about the defense?

7          MR. DALACK:  Yes, Judge.  Thank you.

8          Just for clarification, the defense submission is due

9    September 16?

10         THE COURT:  September 16 for the defense.

11    September 23 for the government to respond.

12         So, I think then, I thank you for your indulgence,

13    everybody, and that concludes our work for today.  We are

14    adjourned.

15         Thank you.

16         MR. LIGTENBERG:  Thank you.

17         MR. DALACK:  Thank you, Judge.

18         (Adjourned)

19

20

21

22

23

24

25